# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

JUBAR T. HOLLEY,
*Petitioner*,

v.

ANNE COURNOYER,
*Respondent*.

Case No. 3:17-cv-587 (VAB)

# RULING AND ORDER ON MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS

On April 10, 2017, Jubar T. Holley ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his four state convictions for criminal possession of a firearm, in violation of CONN. GEN. STAT. § 53a-217. Petition, ECF No. 1. On December 11, 2017, Warden Anne Cournoyer ("Respondent") moved to dismiss the petition on two grounds. First, Ms. Cournoyer argues that Mr. Holley failed to exhaust all but one of his claims. Resp't. Mem. in Supp. of Mot. to Dismiss ("Resp. Mem.") at 10, ECF No. 21-1. Second, Ms. Cournoyer argues that the Mr. Holley's remaining claim, a Fourth Amendment claim, is barred from review under *Stone v. Powell*, 428 U.S. 465 (1976). *Id.* at 10–16.

For the following reasons, Ms. Cournoyer's motion to dismiss is **GRANTED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

The Connecticut Supreme Court set forth the following facts surrounding Mr. Holley's firearm convictions:

> [O]n March 14, 2013, Supervisory Inspector Michael Sullivan of the Connecticut Division of Criminal Justice and Detective Zachary

Sherry of the Hartford Police Department (affiants) applied for a search and seizure warrant pertaining to [Mr. Holley's] residence, a single-family home located in the town of East Hartford. The affiants were assigned to the Greater New Britain Shooting Task Force, which is described as a multiagency investigative unit charged with reducing violent crime in the greater New Britain area. The affiants claim over thirty-five years of combined investigative experience.

In their application for a search warrant, the affiants averred what may be summarized as follows: On March 4, 2013, Sullivan was in contact with David Pierro, who claimed he was a retired police officer from Port Chester, New York. Pierro stated that he had sold a "M16 AR 15 A2 upper receiver" (upper receiver) to [Mr. Holley] through the website Gunbroker.com. Pierro stated that he notified the police regarding this sale because he had performed an Internet search on [Mr. Holley's] name and discovered that [Mr. Holley] had previously been involved in a shooting.

The affiants discovered that [Mr. Holley] had a prior conviction for conspiracy to commit assault in the first degree, stemming from a 1994 shooting in New Britain. Sullivan informed Pierro of this fact. Having confirmed [Mr. Holley's] felony status, Pierro then forwarded documents from Gunbroker.com to Sullivan indicating that [Mr. Holley] had made eight other transactions through the website in the previous two years. Pierro also agreed to ship the upper receiver to Sullivan upon receipt of payment from [Mr. Holley] so that the affiants could arrange a controlled delivery of the upper receiver to [Mr. Holley].

The affiants averred that they confirmed relevant information regarding [Mr. Holley's] address. They confirmed that the shipping address that [Mr. Holley] reportedly provided to Pierro belonged to [Mr. Holley] by verifying land records and verifying the automobile registration of a car parked in the driveway. Additionally, the affiants verified that the telephone number [Mr. Holley] provided to Gunbroker.com correlated to [Mr. Holley]'s address. On March 7, 2013, Sullivan received an e-mail from Pierro containing a copy of a money order for the purchase price of the upper receiver from [Mr. Holley], which listed [Mr. Holley's] home address. On March 11, 2013, Sullivan received a package from Pierro through the mail containing the upper receiver and an envelope containing the money order, which listed [Mr. Holley's] address as the return address.

Pierro informed the police that the "only reason" someone would purchase the upper receiver is if he were assembling an assault rifle. Pierro elaborated that the fact that [Mr. Holley] made eight

> additional purchases within the previous two years on Gunbroker.com further supported his conclusion. The Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), which was assisting the affiants in their investigation,[1] agreed with Pierro's conclusion. Additionally, ATF Special Agent Jacob Berrick informed the affiants that he was able to access [Mr. Holley's] most recent purchase on Gunbroker.com, a "MGW AR–15 AR15 90 round drum," which the affiants averred is a mechanism that holds the ammunition for the firearm, for $125.[2] The affiants averred that the discovery of this transaction supported the conclusion that [Mr. Holley] was purchasing separate firearm parts in order to assemble a complete, functioning firearm.
>
> Moreover, the affiants averred that from their training and experience, they "know ... that typical [firearm] owners do not purchase firearms parts but rather purchase firearms as a whole. Those people that do purchase firearms parts are likely to have a greater interest and expertise in firearms than a typical firearms owner. It is therefore, very likely that [Mr. Holley] has an advanced knowledge and interest in firearms and probably has other firearms in his possession." The affiants further averred that, from their training and experience, they have found that those who illegally possess firearms commonly store such firearms in their residence.
>
> The search warrant was issued on March 14, 2013, and executed the following day. The police seized numerous firearms and firearm related items from [Mr. Holley's] residence.

*State v. Holley*, 324 Conn. 344, 348–50 (2016).

The State of Connecticut (the "State") charged Mr. Holley through a long-form information with thirty-eight counts of criminal possession of a firearm. Pet'r Supreme Ct. Br. at 9, Resp't App. D, ECF No. 21-5. Mr. Holley moved to suppress the evidence obtained from the search, claiming that the search warrant lacked probable cause. *Holley*, 324 Conn. at 350. After a full hearing at which both parties presented their arguments, the trial court denied the motion to

---

[1] "ATF had reportedly served a subpoena upon Gunbroker.com in order to gather more information regarding [Mr. Holley's] transactions on the website. At the time the search warrant application was filed, Gunbroker.com had not responded to the subpoena." *State v. Holley*, 324 Conn. 344, 350 n.5 (2016).

[2] "It is not clear whether this transaction is one of or in addition to the eight other Gunbroker.com transactions Pierro reported to the affiants." *Holley*, 324 Conn. at 350 n.6.

suppress in a written memorandum of decision. *Id.* at 350–51; Petition at 18; Mem. of Decision on Mot. to Suppress, Resp't App. D at 122. The court ruled that Mr. Pierro, the citizen informant, provided detailed information about Mr. Holley's identity, criminal history, and firearm purchases, which the police successfully corroborated through further investigation. Mem. of Decision on Mot. to Suppress, Resp't App. D at 132. The court found that this information, combined with the recent purchase of a firearm part, was sufficiently reliable for the judge issuing the warrant to find probable cause. *Id.*

Mr. Holley thereafter entered pleas of *nolo contendere* to four counts of criminal possession of a firearm conditioned on his right to appeal the trial court's decision on the motion to suppress. *Holley*, 324 Conn. at 351. Mr. Holley appealed the trial court's decision, and the case was transferred directly to the Connecticut Supreme Court. *See id.* at 351 n.7. The Connecticut Supreme Court affirmed the trial court's decision, holding that the search warrant affidavit provided probable cause for the issuing judge to reasonably infer that Mr. Holley intended to assemble a firearm and that the information provided by Mr. Pierro was sufficiently reliable. *Id.* at 355–61.

Mr. Holley did not seek habeas corpus relief in state court. He did, however, file a motion in state court to correct what he argued was an illegal sentence. Petition at 4. In support of his motion, he argued that the court that accepted his pleas had imposed multiple punishments for the same offense. Mot. to Correct Illegal Sentence at 8, Resp't App. G, ECF No. 21-8. Specifically, he argued that he received "4 sentences for 1 crime based on essentially the same facts, same offense, same conduct, at the same time, and for a single occurrence." *Id.* at 9. On July 28, 2017, the trial court denied the motion, ruling that the charging documents supported

four separate violations of criminal possession of a firearm. *See* Mem. of Decision on Mot. to Correct Illegal Sentence, Resp't App. H, ECF No. 21-8. Mr. Holley did not appeal that decision.

B.   **Procedural History**

On April 10, 2017, Mr. Holley filed a petition for writ of habeas corpus in this Court, after filing his motion to correct an illegal sentence in state court and before the state court ruled on his motion. Petition at 2–4; Mem. of Decision on Mot. to Correct Illegal Sentence, Resp't App. H. In addition to challenging the state courts' decisions on his Fourth Amendment challenge to the validity of the warrant, Mr. Holley raises a number of constitutional challenges to his convictions, including the double jeopardy challenge, which he raised in his state motion to correct an illegal sentence, and several others which the state courts have not addressed.

On December 11, 2017, Ms. Cournoyer moved to dismiss the petition for habeas corpus. Mot. Dismiss, ECF No. 21.

## II.   STANDARD OF REVIEW

A petition for writ of habeas corpus challenging a state conviction under § 2254 will be entertained in federal court, only if the petitioner claims that his custody violates the Constitution or federal laws. *See* 28 U.S.C. § 2254(a). A claim based on a state conviction violating only state law is not cognizable in federal court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

A petition for writ of habeas corpus filed by a person in state custody, with regard to any claim rejected on the merits by the state court, cannot be granted, unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

28 U.S.C. § 2254(d). Clearly established federal law is found in holdings, not dicta, of the United States Supreme Court at the time of the state court's decision. *See Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006). A decision is "contrary to" clearly established federal law when it applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies United States Supreme Court law when it has correctly identified the law but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008).

A motion to dismiss a habeas petition is reviewed under the same standard as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6). *See Purdy v. Bennett*, 214 F. Supp. 2d 348, 353 (S.D.N.Y. 2002). To survive a motion to dismiss, the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations in the petition and draw all reasonable inferences in the petitioner's favor. *Id.* This principle does not, however, apply to the legal conclusions that the petitioner draws in the petition. *Id.*; *Twombly*, 550 U.S. at 555. "Where . . . the [petition] was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

## III. DISCUSSION

Mr. Holley raises six arguments: (1) his convictions violated the Fourth Amendment because they were based on evidence obtained through the execution of a search warrant unsupported by probable cause; (2) he received multiple punishments for the same offense, in violation of the Fifth Amendment protection against double jeopardy; (3) the State did not produce sufficient evidence to prove his guilt; (4) the State suppressed material exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (5) the State's criminal possession of a firearm statute is void for vagueness; and (6) the trial court imposed an excessive bail. Mot. to Dismiss at 1, ECF No. 21; Opp. to Mot. to Dismiss at 1–6, ECF No. 28.

Ms. Cournoyer argues first that, with the exception of the Fourth Amendment claim, Mr. Holley has failed to exhaust the claims raised in his petition. Resp't Mem. at 10. Second, Mr. Holley's Fourth Amendment claim is barred from review under *Stone v. Powell*, 428 U.S. 465 (1976). *Id.* at 10–16. Mr. Holley counters that the state prosecutors and courts should be faulted for the unexhaustion of his claims because they failed to conduct a thorough review of his convictions for constitutional violations. Opp. to Mot. Dismiss at 3. In addition, Mr. Holley argues that any attempt to litigate his unexhausted claims in state court would be futile at this point because the results of those claims are "predetermined" and they would be dismissed without lawful reasoning. *Id.* at 2–3. As for his Fourth Amendment claim, he contends that the holding in *Powell* does not preclude relief in his case because "[t]he state . . . failed and/or chose to ignore . . . all of the federal violations that existed." *Id.* at 5.

The Court agrees with Ms. Cournoyer that the United States Supreme Court's holding in *Powell*, 428 U.S. at 481–82, precludes federal habeas review of Mr. Holley's Fourth Amendment claim and that the remaining claims should be dismissed as unexhausted.

### A. Fourth Amendment Claim

Ms. Cournoyer first argues that Mr. Holley's Fourth Amendment challenge to the validity of the search warrant, which led to his firearm convictions, should be dismissed under *Powell*. *See Powell*, 428 U.S. at 481–92; *see also* Resp't Mem. at 11–12. Mr. Holley responds that *Powell* does not apply because his claim challenges more than just the finding of probable cause for the search warrant, and the state "failed and/or chose to ignore . . . all of the federal violations that existed." Pet'r Opp'n at 5.

In *Powell*, the United States Supreme Court considered the justifications for applying the exclusionary rule created by the Fourth Amendment in the context of federal habeas review. *See* 428 U.S. at 485–90; *see also Staton v. Brighthaupt*, 11 Civ. 1525 (MRK), 2012 WL 1144035, *5 (D. Conn. Apr. 4, 2012). Ultimately, the U.S. Supreme Court concluded that the exclusionary rule, the purpose of which is to deter police misconduct, "would not be enhanced by continued application of the rule on federal habeas corpus review occurring many years after trial." *Id.* (citing *Powell*, 428 U.S. at 493). Thus, the U.S. Supreme Court held "that where the [s]tate has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Powell*, 428 U.S. at 494 (footnotes omitted).

The Second Circuit later expanded on the *Powell* rule by establishing "a litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation of his [F]ourth [A]mendment claims." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830 (2d Cir. 1977)). The Second Circuit held that review of a Fourth Amendment claim in a federal habeas petition is warranted only in two instances: "(a) if the state

8

has provided no corrective procedures at all to redress the alleged [F]ourth [A]mendment violations; or (b) if the state has provided a corrective mechanism, but the [petitioner] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Id.* (citing *Gates*, 568 F.2d at 840). An "unconscionable breakdown" in the litigation process does not focus on the outcome of the proceeding but rather "on the existence and application of *corrective procedures* themselves." *Id.* at 71 (emphasis in original). In other words, the "breakdown" must entail some sort of "disruption or obstruction of [the] state proceeding." *Id.* at 70 (internal quotations omitted).

Here, the State provided Mr. Holley with a full and fair opportunity to litigate his Fourth Amendment challenge to his convictions. Before pleading *nolo contendere* to the charges, Mr. Holley filed a motion to suppress the evidence obtained during the search of his residence, and the trial court held a hearing on the motion during which both parties presented their arguments on the validity of the warrant and the issuing judge's finding of probable cause. *See Holley*, 324 Conn. at 350–51. The trial court then denied the motion to suppress in a written memorandum of decision, and, despite pleading *nolo contendere* to the charges, Mr. Holley reserved and used his right to appeal the trial court's decision to the state's highest appellate court. *See id.* These procedures constitute a full and fair opportunity to address any Fourth Amendment issue regarding the convictions and therefore bar federal habeas review of Mr. Holley's Fourth Amendment claim. *See Janulawicz v. CT Comm'r of Corr.*, 14 Civ. 1136 (RNC), 2015 WL 5797015, *2 (D. Conn. Sep. 30, 2015) (finding that petitioner's claim is barred by *Powell* when he filed motion to suppress, which resulted in three-day evidentiary hearing, judgment and appeal). Thus, Mr. Holley's Fourth Amendment claim is dismissed under *Powell*.

Mr. Holley's contention that "[t]he state . . . failed and/or chose to ignore . . . all of the

9

federal violations that existed" with respect to the issuance and execution of the search warrant is meritless. Opp. to Mot. Dismiss at 5. Whether there were other Fourth Amendment implications that the state prosecutors and courts failed to address does not change the fact that Mr. Holley had a full and fair opportunity to litigate those issues. *See Capellan*, 975 F.2d at 71 (focus is on existence of corrective procedures, not on outcome of proceedings); *Staton*, 2012 WL 1144035, at *5 (whether petitioner took full advantage of opportunity to litigate his Fourth Amendment claims is irrelevant; bar to federal habeas review is insurmountable as long as the state provided full and fair opportunity for litigation). Moreover, it is not the prosecutor's or court's responsibility to identify and present any and all constitutional arguments on Mr. Holley's behalf. Represented by counsel at both the trial and appellate levels, Mr. Holley had the ability to present any and all Fourth Amendment claims regarding the investigation. As shown below, to the extent Mr. Holley claims that the search violated other constitutional amendments or provisions, those claims are unexhausted and beyond the scope of this Court's review.

The Court thus agrees with Ms. Cournoyer that any Fourth Amendment claim challenging Mr. Holley's convictions is barred from federal habeas review under *Powell*. This decision constitutes a denial of his Fourth Amendment claim on the merits. *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002). Mr. Holley's Fourth Amendment claim therefore is dismissed with prejudice.

### B. Exhaustion of Other Claims

Ms. Cournoyer next argues that Mr. Holley's remaining claims in the federal habeas petition are unexhausted because he never raised them in state court or appealed the trial court's denial of his motion to correct an illegal sentence. Mr. Holley argues that he has made diligent

efforts to exhaust his claims and any failure to exhaust is the fault of the state prosecutors and courts. The Court agrees that the claims are unexhausted and warrant dismissal.

A prerequisite to habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of available state remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The Second Circuit requires the district court to conduct a two-part inquiry. First, the petitioner must present the factual and legal bases of his federal claim to the highest state court capable of reviewing it. Second, he must have used all available means to secure appellate review of his claims. *See Galdamez v. Keane*, 394 F.3d 68, 73–74 (2d Cir. 2005).

Failure to exhaust state remedies may be excused only if "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*); 28 U.S.C. § 2254(b)(1)(B). The petitioner may not, however, simply wait until appellate remedies are no longer available and then argue that the claim is exhausted. *See Galdamez*, 394 F.3d at 72–74.

In *Zarvela v. Artuz*, 254 F.3d 374 (2d Cir. 2001), the Second Circuit held that, when confronted with a "mixed petition" containing both exhausted and unexhausted habeas claims, the court has discretion either to dismiss the petition in its entirety or dismiss only the unexhausted claims and stay the balance of the petition. In some cases, as in *Zarvela*, a stay of the petition is more appropriate because "an outright dismissal could jeopardize the timeliness of a collateral attack." *Id.* at 380 (quoting *Freeman v. Page*, 208 F.3d 572, 577 (7th Cir. 2000)); *see also Duncan v. Walker*, 533 U.S. 167, 181 (2001) (pendency of first federal habeas petition did not toll limitations period under 28 U.S.C. § 2244(d)(2)).

More recently, however, the United States Supreme Court held that staying a mixed petition "decreas[es] a petitioner's incentive to exhaust all his claims in state court prior to filing

his federal petition." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). It permits a petitioner to delay resolution of his federal proceedings. *Id.* Therefore, "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* Even if a petitioner had good cause for failure to exhaust, the district court should not grant a stay if the unexhausted claims are plainly meritless. *Id.*

The Court agrees with Ms. Cournoyer that all of the claims raised in the petition have not been fully exhausted in state court, with exception of the Fourth Amendment challenge. Although Mr. Holley raised the double jeopardy claim in his state motion to correct an illegal sentence, he did not appeal the trial court's decision denying that motion. To the extent Mr. Holley challenges his convictions on any ground other than his Fourth Amendment challenge to the search warrant, such challenges were never raised in state court and, therefore, are not cognizable for this Court's review.

In some cases, a federal district court may deem a claim exhausted "when there is no question the claim would be procedurally defaulted in state court." *Janulawicz*, 2015 WL 5797015, at *3 (citing *Aparicio v. Artuz*, 269 F.3d 79, 90 (2d Cir. 2001)). A claim that has been procedurally defaulted in state court cannot be reviewed in a federal habeas petition because the default constitutes an independent and adequate state ground for decision, and the federal court ruling would, therefore, be merely advisory. *Id.* In this case, however, the record does not indicate that Mr. Holley's unexhausted claims would be procedurally defaulted. He has never filed a petition for writ of habeas corpus in state court attacking the validity of his *nolo contendere* pleas or appealed the trial court's denial of his motion to correct an illegal sentence. Because this Court cannot definitively conclude that Mr. Holley's unexhausted claims would be procedurally defaulted, it will dismiss those claims without prejudice subject to refiling after

exhaustion. *See id.* (holding that it is better to dismiss claims without prejudice for failure to exhaust when record does not clearly show procedural default).

Mr. Holley's arguments blaming the state prosecutors and courts for his failure to exhaust his claims fail. He argues that "[i]t is through no fault of [his] own that the [state] court[s] failed to thoroughly conduct a federal constitutional analysis or discussion" of those issues. Opp. to Mot. Dismiss at 3. It is not, however, the responsibility of the state-appellee or the reviewing court to identify and present possible legal issues implicated by Mr. Holley's convictions. Rather, it is Mr. Holley, as the appellant (or petitioner in a state habeas action), must present his constitutional challenges and any other legal claims regarding the validity of his convictions or sentences. *See State v. Buhl*, 321 Conn. 688, 724 (2016) (appellant bears responsibility of furnishing adequate record to present issue through adequate brief); *State v. Pearson*, 139 Conn. App. 521, 524–25 (2012) (same).

The Court also does not agree any further attempt to exhaust his claims would be futile because the state's post-conviction procedures are "bias[ed]" and "fundamental[ly] unfair[]" and, due to congestion of the habeas corpus docket, his claims would not be reviewed for quite some time. *See* Petition at 6; Opp. to Mot. Dismiss at 2. This Court has rejected similar claims made by petitioners seeking exemption from the exhaustion doctrine. *See Staton*, 2012 WL 1144035, at *4 (fact that state habeas proceeding might result in lengthy process does not establish good cause for failure to exhaust); *Argiros v. Torres*, 09 Civ. 1088 (AWT), 2010 WL 2377111, *2 (D. Conn. Jun. 10, 2010) ("The fact that the petitioner does not trust the state courts is not a sufficient reason to excuse exhaustion of his claim"). Thus, this Court rejects Mr. Holley's arguments with respect to his unexhausted claims.

Based on the foregoing, the Court will dismiss without prejudice all of the remaining

claims in Mr. Holley's petition. Mr. Holley may refile his petition after he has fully exhausted his claims in state court.[3]

## IV. CONCLUSION

For the foregoing reasons, Ms. Cournoyer's motion to dismiss the petition, ECF No. 21, is **GRANTED**. Mr. Holley's Fourth Amendment claim challenging the validity of the search warrant is **dismissed with prejudice**. All other claims are **dismissed without prejudice** subject to refiling after they have been fully exhausted in state court. The Clerk of the Court is directed to enter judgment in favor of Ms. Cournoyer and close this case.

Within **sixty (60) days** from the date of this order, Mr. Holley must attempt to exhaust his claims by filing a state petition for writ of habeas corpus or some other form of state post-conviction relief and present the factual and legal bases of all claims he seeks to exhaust. Moreover, he must use all available means to secure state appellate review of those claims. *See Galdamez*, 394 F.3d at 73–74. Following exhaustion of all state court remedies, Mr. Holley may file a motion to reopen this case and attach an amended petition with the exhausted claims. The amended petition must be filed within **thirty (30) days** of the highest state court judgment on all

---

[3] This Court recognizes that any new federal habeas petition would normally be barred by the one-year statute of limitations under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2244(d)(1) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-- . . . (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ."); *Murphy v. Strack*, 9 Fed. App'x 71, 72 (2d Cir. 2001) ("Although AEDPA also provides for a tolling of the limitations period while the defendant seeks postconviction or collateral review, *see* 28 U.S.C. § 2244(d)(2), that provision does not make Murphy's petition timely, for it merely interrupts the running of an unexpired limitations period."). Based on the Court's review of the record, the petitioner's limitation period commenced on July 28, 2017, when the state court denied his motion to correct an illegal sentence. Because the filing of a federal habeas petition does not toll a limitation period; *Staton*, 2012 WL 1144035, at *3; his limitations period expired on July 28, 2018. The federal petition in this case, however, remained pending on the Court's docket for a considerable period of time. Thus, in the interests of justice, the Court will toll the limitations period and allow Mr. Holley one opportunity to amend his petition following proper exhaustion, as described in the Court's conclusion. *See Doe v. Menefee*, 391 F.3d 147, 159 (2d Cir. 2004) ("Although AEDPA does not provide that its limitations period may be tolled for any reason other than the pendency of a state post-conviction motion, *see* 28 U.S.C. § 2244(d)(2), in 'rare and exceptional circumstances' a petitioner may invoke the courts' power to equitably toll the limitations period.") (quoting *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000)).

claims stated therein. Any new claims stated in the amended petition that have not presented to the state court will be dismissed.

The Court concludes that Mr. Holley has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith, and a certificate of appealability will not issue.

**SO ORDERED** this 14th day of August 2018 at Bridgeport, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge